Louis Pechman
Laura Rodríguez
Lillian M. Marquez
488 Madison Avenue – 11th Floor
New York, New York 10022
pechman@pechmanlaw.com
rodriguez@pechmanlaw.com
marquez@pechmanlaw.com
(212) 583-9500
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

YANICK ANDRE,                                      :
                                                   :
                          Plaintiff,               :
                                                   :        **COMPLAINT**
              -against-                             :
                                                   :
ADVANTAGECARE PHYSICIANS, P.C. D/B/A               :
ADVANTAGECARE PHYSICIANS,                           :
                                                   :
                          Defendant.               :

-----------------------------------------------------------------------X

Plaintiff Yanick Andre ("plaintiff" or "Andre"), by her attorneys Pechman Law

Group PLLC, complaining of defendant, AdvantageCare Physicians, P.C. d/b/a

AdvantageCare Physicians ("ACP"), alleges as follows:

### NATURE OF THE ACTION

1.      This action is brought pursuant to the anti-discrimination provisions of

the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), the Age

Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), the Family and

Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"), the New York State Human

Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL"), and the New York City Human

Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.*  ("NYCHRL").

2.      ACP is the largest physician-led healthcare practice in the New York

metropolitan area and prides itself in the compassionate care it provides to its patients.

When long-time employee Andre needed time off from work to take care of her ailing husband, however, ACP unlawfully terminated her because of her age, her husband's disability, and her utilization of leave under the FMLA.

3.      Due to her unlawful termination, plaintiff brings this action for injunctive and declaratory relief, compensatory, punitive, and liquidated damages, pre- and post-judgment interest, attorneys' fees and costs, and other appropriate equitable and legal relief.

## JURISDICTION

4.      This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 2000e-5(f)(1), 29 U.S.C. § 626(c)(1), 29 U.S.C. § 2617(a)(2), and has supplemental jurisdiction over plaintiff's claims under the NYSHRL and the NYCHRL pursuant to 28 U.S.C. § 1367.

5.      Pursuant to Section 8-503 of the New York City Administrative Code, plaintiff shall, within ten days of its filing, serve a copy of this Complaint to designated city representatives.

6.      Andre filed a claim with the Equal Employment Opportunity Commission ("EEOC") on March 14, 2016, and received a Notice of Right to Sue on August 17, 2016.

## VENUE

7.      Venue is proper in the Southern District of New York under 28 U.S.C. § 1391 because the headquarters of ACP, where Andre was interviewed, and the decision to terminate her was made, is located at 441 Ninth Ave, New York, NY 10001, in the Southern District of New York.

## THE PARTIES

**Plaintiff**

8.      Yanick Andre resides in Suffolk County, New York.

9.      Andre was born on March 21, 1954.

10.     Defendant employed Andre as a Medical Office Administrator.

**Defendant**

11.     Defendant AdvantageCare Physicians, P.C. is an "employer" within the meaning of the NYSHRL and the NYCHRL, and employed plaintiff.

12.     AdvantageCare Physicians, P.C. is a New York corporation that owns and operates ACP.

13.     ACP has approximately thirty-seven medical offices in New York City and Long Island, and operates its headquarters at 441 Ninth Ave, New York, NY 10001.

## FACTS

**Andre's Employment History**

14.     In 1993, Andre was hired as a Medical Assistant by HIP Health Plans of New York ("HIP"), a company that later merged with Queens Long Island Medical Group ("QLIMG") and ACP.

15.     While working as a Medical Assistant, Andre primarily worked in the Pediatrics Department, but also worked in the Ophthalmology, Dermatology, Physical Therapy Departments as needed.

16.     In approximately 1998, Andre was promoted to the position of Department Supervisor in which she supervised the OB/GYN Departments.

17.     Andre was again promoted in 2009 to Associate Office Manager.

18.     In 2011, Andre was promoted to Medical Office Administrator ("MOA").

3

19.     In or about February 2013, QLIMG and other area practices merged to form ACP.

20.     As of January 2014, and until the time of her termination, Andre worked as an MOA at the Woodbury, Long Island Office of ACP and earned an annual salary of $62,399.97.

21.     As ACP's MOA, Andre was responsible for, *inter alia*, managing employee schedules, addressing patients' grievances, overseeing payroll practices, processing daily cash receipts, maintaining medical records, confirming that medical equipment was not outdated or being used improperly, coordinating and leading meetings with employees and doctors, and conducting performance reviews.

22.     Andre never received any warnings or disciplinary notices during her time at ACP or its predecessor companies.

23.     Andre received positive evaluations throughout her time working for ACP and its predecessor companies.

**Andre's Husband Is Diagnosed with Cancer and Andre Requests FMLA Leave**

24.     Andre's husband, Hantz Andre ("Hantz"), fell ill in September 2015 and was hospitalized on September 23, 2015.

25.     While in the hospital, Hantz was diagnosed with prostate cancer.

26.     Upon his doctor's recommendation, Hantz was scheduled for surgery to treat his cancer on November 2, 2015.

27.     Due to his hospitalization, surgery, and post-surgery recovery, Hantz was confined to bed and forced to take a leave of absence from his work as a pastor at Highland Church in Jamaica, New York.

4

28.     Prior to Hantz's surgery, Andre requested leave from ACP under the Family and Medical Leave Act ("FMLA"), so that she could provide the constant care her husband would need following his surgery.

29.     ACP granted Andre's request for unpaid leave to begin Monday, October 26, 2015 and end Sunday, January 17, 2016.

30.     Andre used two vacation days to begin her leave on Thursday, October 22, 2015.

**Andre Is Told to Reapply for Her Job Days Before Her Husband's Surgery**

31.     On October 22, 2015, the first day of Andre's family leave, she received a call from Anne Dunne, ACP's Regional Vice President of Operations, and Jessica Chiclacos, a Human Resources staff member at ACP.  Dunne told Andre that ACP was reorganizing the management team and that Andre would have to reapply for her job. Nothing about ACP's reorganization was shared with Andre before she started her FMLA leave, despite numerous meetings and conversations with supervisory staff in the days immediately preceding the start of the leave.

32.     Dunne told Andre to submit her resume and a job application and said that Andre would be contacted for an interview.

33.     Andre submitted her application materials via an online portal on ACP's website on or about October 28, 2015.  On the application Andre indicated her willingness to relocate from the Woodbury location in order to keep working for ACP.

34.     Dunne explained to Andre that the MOA position was being renamed and changed to the title of "Practice Administrator."  Andre therefore applied for the Practice Administrator job, as well as the Associate Practice Administrator position, a new job being created during the reorganization process.

35.     Although the Associate Practice Administrator position was not as highly ranked or well compensated as the Practice Administrator position, Andre applied because she was willing to take any job to remain employed by ACP.

36.     Dunne contacted Andre and asked her to attend an interview at ACP on November 3, 2015.  Because her husband's surgery was set to take place on November 2, 2015 and she could not predict its outcome, Andre requested that the interview be held at a later date.

37.     Dunne scheduled Andre to attend an interview on November 9, 2015.

38.     On November 2, 2015, Hantz underwent surgery.  He was discharged on November 5, 2015, but, due to unforeseen medical complications, he was readmitted to the hospital on November 7, 2015.  He remained hospitalized until November 19, 2015.

39.     Before his abscess was diagnosed, Hantz experienced excruciating pain that his doctors did not know how to treat.  It was during this time, when Hantz was in terrible, seemingly inexplicable pain, that Andre was required to report to ACP for her interview.

**Andre Attends an Interview at ACP's Headquarters**

40.     On November 9, 2015, a panel of four people interviewed Andre at ACP's Manhattan headquarters: Meredith Gamble, the Director of the Human Resources Department at ACP's Staten Island Office; Gina Bloome, ACP's Director of Recruitment; Gerren Faustini, ACP's Regional Vice President for Manhattan and Staten Island; and Dunne.

41.     Andre spoke with Dunne in the reception area of ACP's Manhattan headquarters before commencing the interview.  Andre told Dunne about Hantz's condition.

42.     Dunne and at least one other interviewer knew about the medical challenges Andre's husband was facing at the time of the interview.

43.     Andre was suffering from extreme emotional distress at the time of her interview due to concerns about her husband's condition.

44.     Despite her feelings of emotional distress and concern for her husband's wellbeing, Andre responded to all the questions posed by the interviewers and gave examples of her abilities as MOA.

45.     In response to one of the questions posed by the interviewers, Andre described the way she quickly responded to a flood caused by pipes that burst at the Woodbury ACP office on March 7, 2013.

46.     Andre explained how she took the lead in communicating with and relocating patients, doctors and staff members affected by the flood with such efficiency that, under her direction, her team had completed their relocation by approximately 11:00 a.m. that morning.

47.     The Woodbury ACP office remained closed for five months after the flood and employees were reassigned across five buildings.

48.     Andre continued to oversee the work of all employees throughout that time to make sure that everything was running smoothly.

49.     The manner in which Andre handled the complications caused by the flood is just one instance of her exemplary abilities as an MOA.

50.     Andre did not hear anything from ACP for one month after her interview.

**Andre Is Not Re-Hired by ACP**

51.     On December 10, 2015, Dunne called Andre and told her that ACP would not rehire her.  Dunne stated that a member of Human Resources would contact Andre with information about next steps.

52.     On January 4, 2016, after nearly a month without communication from ACP, Andre called the Human Resources office and left a message.

53.     Andre did not have a substantive conversation with anyone at ACP regarding her employment status until January 13, 2016, when Andre participated in a conference call with Dunne and Andrew Hodes, Director of Labor Relations at ACP. Andre's FMLA leave was scheduled to end four days later.  However, Andre was directed not to return to work.  Dunne suggested that it would be best if Andre remained at home with her husband instead.

54.     Dunne and Hodes informed Andre that she would soon be sent a Separation Agreement and Release.  In exchange for signing the Agreement and Release, Andre would be paid one week of severance for every six months that Andre worked at ACP.  This severance payment calculation did not include the time Andre worked for ACP's predecessor companies, HIP or QLIMG.  Therefore, Andre would be paid approximately four weeks of severance pay.

55.     Andre received ACP's Separation Agreement on January 28, 2016.  The Agreement stated that Andre would be paid a lump sum of $4,297.33, less applicable withholding and deductions, within twenty business days following the execution of the Agreement.

56.     Andre did not sign the Separation Agreement and Release.

**Andre Obtains Legal Counsel and Files an EEOC Complaint**

57.     On March 14, 2016, Andre filed a claim with the EEOC.

8

58.     ACP submitted a position statement dated June 22, 2016 in response to Andre's EEOC Complaint asserting that ACP's "decision to terminate Andre's employment was entirely unrelated to her age or her husband's disability."

59.     According to ACP's position statement, "the Company's hiring decisions had nothing whatsoever to do with experience; rather, the hiring decisions were based solely on the responses to the interview questions" and that the decision not to rehire Andre was based solely on her "own performance during an interview."

60.     The position statement makes no mention of Andre's interview answer detailing how she handled the flood at the Woodbury ACP office.  Instead, ACP compares Andre's interview performance to that of Arlene Martin, the person hired as Associate Practice Administrator over Andre and who Andre previously supervised. ACP stated that, in one answer, Martin "described how the Woodbury office once had a flood; by 7 a.m., she delegated responsibilities to various staff-members; by 11:30 a.m., Martin had called and redirected patients across various locations."  Ironically, Andre was the person in actual charge at the time and, as Martin's supervisor, tasked Martin with executing certain aspects of the post-flood reorganization, yet that fact was apparently not considered by the interview panel.

61.     ACP alleged that Andre's answers to the interview questions posed were "short, lacking in detail, and incomplete," but this characterization was not reflected in the attached notes of the interviewers.

62.     ACP allegedly focused only on Andre's interview despite knowing that she was suffering from severe emotional distress at the time of the interview because she left her husband severely ill and alone in the hospital.  Moreover, the notion that ACP's hiring decision "had nothing whatsoever to do with experience" is a blatant attempt to create a pretext for not rehiring Andre.

9

**Andre Was Discriminated Against by ACP**

63.     Andre was not permitted to return to work at ACP after the end of her FMLA leave even though Andre was ready, willing, and able to perform the duties required of both the Practice Administrator and the Associate Practice Administrator.

64.     Kristan Brodie Bullard ("Bullard") was hired by ACP as Practice Administrator.

65.     Andre had more experience and was more qualified than Bullard for the position of Practice Administrator.

66.     Bullard was the interim MOA during Andre's FMLA leave period.

67.     Prior to serving as interim MOA, a job that she filled for less than three months, Bullard had worked for ACP as a Patient Ambassador, a completely different position with fewer responsibilities.

68.     Bullard is approximately twenty-five to thirty years old.

69.     Martin, the person hired as Associate Practice Administrator, had previously worked as a Patient Services Supervisor ("PSS"). As MOA, Andre had more supervisory responsibility than Martin had as a Patient Services Supervisor, a position that required Martin to supervise only receptionists.

70.     As a PSS, Martin did not take FMLA leave and did not have any association with a disabled person.

71.     Despite twenty-four years of experience and positive evaluations throughout her time as ACP's MOA, Andre was not allowed to return to work as Practice Administrator or as an Associate Practice Administrator.

72.     Andre was discriminated against and not offered a job with ACP due to her age, her husband's disability, and her utilization of FMLA leave.

73.     By the above and other acts, ACP terminated and subjected Andre to unlawful discrimination based on age, associational disability, and exercise of her rights under the FMLA.

### FIRST CLAIM
### (ADA – Associational Disability Discrimination)

74.     Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

75.     Defendant was plaintiff's employer within the meaning of the ADA.

76.     Plaintiff was defendant's employee within the meaning of the ADA.

77.     Plaintiff's husband, Hantz, was disabled within the meaning of the ADA.

78.     Defendant knew that plaintiff's husband was ill and needed care from plaintiff, as per her request for FMLA leave.

79.     Defendant knew plaintiff's husband was disabled due to his prostate cancer and its related treatment, as well as due to an additional, then-unknown condition that he suffered at the time of plaintiff's interview on November 9, 2015.

80.     Defendant willfully and unlawfully discriminated against plaintiff by denying her the opportunity to continue working for defendant due to her husband's actual or perceived disability.

### SECOND CLAIM
### (NYSHRL – Associational Disability Discrimination)

81.     Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

82.     Defendant was plaintiff's employer within the meaning of the NYSHRL.

83.     Plaintiff was defendant's employee within the meaning of the NYSHRL.

84.     Plaintiff's husband, Hantz, was disabled within the meaning of the NYSHRL.

85.     Defendant knew that plaintiff's husband was ill and needed care from plaintiff, as per her request for FMLA leave.

86.     Defendant knew that plaintiff's husband was disabled due to prostate cancer and its related treatment, as well as due to an additional, then-unknown condition he suffered at the time of plaintiff's interview on November 9, 2015.

87.     Defendant based the decision not to re-hire Andre solely on the results of her interview, despite knowing that she was distressed at the time of the interview due to her husband's condition.

88.     Defendant willfully and unlawfully discriminated against plaintiff by denying her the opportunity to continue working for defendant due to her husband's actual or perceived disability.

### THIRD CLAIM
**(NYCHRL - Associational Disability Discrimination)**

89.     Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

90.     Defendant was plaintiff's employer within the meaning of the NYCHRL.

91.     Plaintiff was defendant's employee within the meaning of the NYCHRL.

92.     Plaintiff's husband, Hantz, was disabled within the meaning of the NYCHRL.

93.     Defendant knew that plaintiff's husband was ill and needed care from plaintiff, as per her request for FMLA leave.

94.     Defendant knew that plaintiff's husband was disabled due to prostate cancer and its related treatment, as well as due to an additional, then-unknown condition he suffered at the time of plaintiff's interview on November 9, 2015.

95.     Defendant based the decision not to re-hire Andre solely on the results of her interview, despite knowing that she was distressed at the time of the interview due to her husband's condition.

96.     Defendant willfully and unlawfully discriminated against plaintiff by denying her the opportunity to continue working for defendant due to her husband's actual or perceived disability.

**FOURTH CLAIM**
**(ADEA- Age Discrimination)**

97.     Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

98.     Defendant was plaintiff's employer within the meaning of the ADEA.

99.     Plaintiff was defendant's employee within the meaning of the ADEA.

100.    Defendant knew that plaintiff was, or perceived her to be, over the age of forty at the time of her termination.

101.    Defendant replaced plaintiff with a younger employee.

102.    Defendant willfully and unlawfully discriminated against plaintiff on the basis of plaintiff's actual or perceived age by terminating her employment and replacing her with a younger employee.

**FIFTH CLAIM**
**(NYSHRL – Age Discrimination)**

103.    Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

104.    Defendant was plaintiff's employer within the meaning of the NYSHRL.

105.    Plaintiff was defendant's employee within the meaning of the NYSHRL.

106.    Defendant knew that plaintiff was, or perceived her to be, over the age of forty at the time of her termination.

107.    Defendant hired a younger employee over plaintiff.

108.    Defendant willfully and unlawfully discriminated against plaintiff on the basis of plaintiff's actual or perceived age by terminating her employment and replacing her with a younger employee.

**SIXTH CLAIM**
**(NYCHRL – Age Discrimination)**

109.    Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

110.    Defendant was plaintiff's employer within the meaning of the NYCHRL.

111.    Plaintiff was defendant's employee within the meaning of the NYCHRL.

112.    Defendant knew that plaintiff was, or perceived her to be, over the age of forty at the time of her termination.

113.    Defendant hired a younger employee over plaintiff.

114.     Defendant willfully and unlawfully discriminated against plaintiff on the basis of plaintiff's actual or perceived age by terminating her employment and replacing her with a younger employee.

## SEVENTH CLAIM
## (FMLA – Retaliation)

115.     Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

116.     Defendant was plaintiff's employer within the meaning of the FMLA.

117.     Plaintiff was entitled to FMLA leave and, accordingly, was granted FMLA leave by defendant due to plaintiff's husband's disability.

118.     Plaintiff's MOA position was eliminated while she was on FMLA leave and she was not re-hired after her pre-approved FMLA leave period ended.

119.     Defendant willfully and unlawfully retaliated against plaintiff by not rehiring her because she took FMLA leave.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that this Court enter a judgment:

a.     declaring that the acts and practices complained of herein are in violation of the Americans with Disabilities Act, the Age Discrimination in Employment Act, the Family and Medical Leave Act, the New York State Human Rights Law, and the New York City Human Rights Law;

b.     enjoining and permanently restraining these violations of the Americans with Disabilities Act, the Age Discrimination in Employment Act, the Family and Medical Leave Act, the New York State Human Rights Law, and the New York City Human Rights Law;

  c.  directing defendant to reinstate plaintiff in the position plaintiff would be in but for its discriminatory and unlawful acts, and to make plaintiff whole for all earnings she would have received but for defendant's discriminatory and unlawful treatment, including, but not limited to, wages, health insurance and other fringe benefits, bonuses, pension, front-pay, and other lost employment benefits;

  d.  directing defendant to pay plaintiff compensatory damages for, *inter alia,* mental anguish, emotional distress and humiliation;

  e.  directing defendant to pay plaintiff punitive damages for its intentional disregard of and reckless indifference to plaintiff's rights;

  f.  awarding plaintiff the costs of this action together with reasonable attorneys' fees and pre- and post-judgment interest; and

  g.  awarding such other and further relief as this Court deems just and equitable.

## DEMAND FOR TRIAL BY JURY

  Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury in this action.

Dated: New York, New York
    November 9, 2016

         PECHMAN LAW GROUP PLLC

         By: 
          Louis Pechman
          Laura Rodriguez
          Lillian M. Marquez
          488 Madison Avenue – 11th Floor
          New York, New York 10022
          (212) 583-9500
          pechman@pechmanlaw.com
          rodriguez@pechmanlaw.com
          marquez@pechmanlaw.com
          *Attorneys for Plaintiff*